**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **CECILIA SIMMONS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-15-CV-286-KC** |
| | § | |
| **OUTREACH HEALTH** | § | |
| **COMMUNITY CARE SERVICES LP** | § | |
| **d/b/a OUTREACH HEALTH** | § | |
| **SERVICES, OUTREACH HEALTH** | § | |
| **CARE INC., GENERAL PARTNER** | § | |
| **DBA OUTREACH HEALTH** | § | |
| **COMMUNITY CARE SERVICES LP** | § | |
| **WORK RELATED INJURY PLAN,** | § | |
| **and TEXAS HEALTHCARE** | § | |
| **FOUNDATION, L.P.,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day, the Court considered Defendants Outreach Health Community Care Services

LP d/b/a Outreach Health Services ("Outreach Health") and Outreach Health Care, Inc.,

Employee Injury Benefit Plan's[1] (the "Plan") (collectively "Outreach Defendants") Partial

Motion to Dismiss, Motion to Strike Jury Demand, and Memorandum in Support Thereof

("Partial Motion to Dismiss"), ECF No. 10, and Outreach Defendants' Motion to Strike

Plaintiff's Response in Partial Opposition to Defendants' Partial Motion to Dismiss ("Motion to

Strike"), ECF No. 13.  For the following reasons, the Partial Motion to Dismiss is **GRANTED** in

part, and the Motion to Strike is **DENIED**.

---

[1] Outreach Defendants assert that Plaintiff has incorrectly named the Plan as "Outreach Health Care Inc., General
Partner DBA Outreach Health Community Care Services LP Work Related Injury Plan."  *See* Partial Mot. to
Dismiss 1.  According to Outreach Defendants, the correct name is "Outreach Health Care, Inc. Employee Injury
Benefit Plan."  *See id.*

## I.    BACKGROUND

The following facts are taken from Plaintiff's Complaint, ECF No. 1:

Plaintiff brings this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001 *et seq*.  *See* Compl. ¶ 6.  Plaintiff was injured on the job while working for Outreach Health, and seeks damages as a result of Defendants' unlawfully denying Plaintiff benefits under the Plan.  *See id*.

Outreach Health employed Plaintiff as a part-time "Community Care Attendant."  *Id*. ¶ 8. Plaintiff's responsibilities included visiting homebound patients to provide treatment and care. *Id*.  On or about October 4, 2010, Plaintiff, who is sixty-three years old and disabled, suffered severe and debilitating injuries while acting in the scope of her employment.  *See id*. ¶¶ 9, 11, 52. As a result of her injuries and subsequent treatment, "Plaintiff was taken off work."  *Id*. ¶ 10.

At the time of Plaintiff's injury, Outreach Health did not have workers' compensation insurance for its Texas employees, and "was a non-subscriber under the Texas Worker[s'] Compensation Act."  *Id*. ¶ 12.  However, Outreach Health self-administered an insurance policy, which constituted the Plan and was covered by ERISA.  *Id*.  Outreach Health was the Plan Administrator.[2]  *Id*. ¶¶ 3, 13.  Plaintiff was a participant in, and is a beneficiary of, the Plan.  *Id*. ¶ 13.

Outreach Health hired and retained Texas Healthcare Foundation, L.P. ("Texas Healthcare") as the claims-handling company responsible for administering and handling Plaintiff's claim under the Plan.  *Id*.  At all relevant times, Texas Healthcare acted as Outreach Health's agent, with actual and apparent authority to act under the Plan on Outreach Health's

---

[2] However, the Outreach Health Care, Inc. Employee Injury Benefit Plan Amended and Restated Summary Plan Description ("Summary Plan Description"), Partial Mot. to Dismiss Ex. A, ECF No. 10-1, lists "Outreach Health Care, Inc." as the Plan Administrator.  *See* Summary Plan Description 12.

behalf.  *Id.*  Outreach Health and Texas Healthcare are named fiduciaries in the Plan document, functionally exercise discretion or control over the management of the Plan or the management or disposition of Plan assets, and/or had discretionary authority or responsibility over the administration of the Plan.  *Id.* ¶ 15.

Under the Plan, Plaintiff was entitled to receive benefits of weekly compensation and medical benefits due to her incapacity resulting from her injury.  *Id.* ¶ 16.  Defendants misrepresented to Plaintiff, through words and conduct, including through a summary plan description and other written documents, that Plaintiff would be entitled to benefits under the Plan for work related injuries.  *Id.* ¶ 52.  Plaintiff alleges she relied on these misrepresentations to her detriment.  *Id.* ¶ 54.

After her injury, Plaintiff sought and received medical treatment, which was covered under the Plan.  *Id.* ¶ 16.  On or about January 20, 2011, Plaintiff's treating physician, Dr. Terren Klein ("Dr. Klein"), diagnosed Plaintiff as suffering from several disc protrusions.  *Id.*  Dr. Klein issued a report indicating that Plaintiff should be referred to another physician for a surgical evaluation.  *Id.*  Plaintiff attended subsequent follow-up appointments with Dr. Klein.  *See id.* ¶¶ 21, 22.  However, Plaintiff was not aware of, and therefore failed to attend, a follow-up appointment that had been scheduled for June 17, 2011.  *Id.* ¶ 22.

Tammy Heibel ("Heibel"), an Outreach Health employee, claims to have sent a letter to Plaintiff on June 24, 2011, warning Plaintiff that her failure to attend the June 17 appointment had placed her Plan benefits "in jeopardy," and that her appointment had been rescheduled for July 1, 2011.  *Id.* ¶ 23.  Heibel scheduled the July 1, 2011, appointment without consulting Plaintiff.  *Id.*  Plaintiff did not receive Heibel's letter.  *Id.* ¶ 24.  However, Plaintiff learned about

the July 1 appointment through a telephone conversation with Charlene Chamberlin ("Chamberlin"), a Texas Healthcare employee.  *Id.*  Plaintiff was ultimately unable to attend the July 1 appointment because she suffers from seizures, and experienced a seizure the morning of the appointment.  *Id.* ¶ 26.

Subsequently, Heibel and Chamberlin "deliberately and intentionally looked for pretextual and non-medical reasons to deny and forfeit Plaintiff's right to receive continuing and future medical and wage benefits to which she was entitled under the Plan."  *Id.* ¶ 34.  Heibel and Chamberlin did this "to ensure that any future surgery or other extensive medical treatment would not be covered under the Plan."  *Id.*  Thus, on July 7, 2011, Heibel notified Plaintiff that her Plan benefits were being forfeited and terminated for the sole reason that she had missed a rescheduled medical appointment with Dr. Klein on July 1, 2011.  *Id.* ¶ 26.  Heibel and Chamberlin "intentionally misrepresented and falsely represented to Plaintiff that she was denied benefits due to a false and/or pretextual reason."  *Id.* ¶ 34.  Plaintiff alleges she relied upon these misrepresentations to her detriment.  *Id.*

On August 11, 2011, Plaintiff filed an appeal of the notice of adverse benefit determination.  *Id.* ¶ 29.  Subsequently, "Outreach Plan Review Committee Members" sent Plaintiff a letter, dated September 26, 2011, informing Plaintiff of their decision to uphold the adverse benefit determination.  *Id.* ¶ 31.

Defendants wrongfully terminated Plaintiff's Plan benefits even though "no physicians or other health care providers indicated Plaintiff had failed to comply with their directions and instructions in receiving medical care."  *Id.* ¶ 42(a).  Additionally, "[t]here was no medical reason whatsoever, and no indication from Dr. Klein or any of [Plaintiff's] other medical

providers, that [Plaintiff] had failed to follow directions or instructions or was otherwise non-compliant in her medical care and treatment." *Id*. ¶ 26.  Defendants refused "to rely on medical opinions of treating physicians and other health care providers who indicated Plaintiff complied with their directions and instructions in receiving medical care." *Id*. ¶ 42(d).  In fact, Heibel and Chamberlin both knew, based on Dr. Klein's earlier medical reports, that Plaintiff was complying with directions and improving as a result of her medical care.  *Id*. ¶ 26.  Nevertheless, Heibel and Chamberlin "intentionally and deliberately used the July 1 appointment with Dr. Klein as a pretext to 'forfeit' [Plaintiff's] benefits and eliminate her medical and/or wage benefits to which she was entitled under the Plan."  *Id*.  Defendants wrongfully terminated the Plan benefits "without reasonable reliance on any medical opinions," and without reasonable justification.  *Id*. ¶ 42(b)-(c).

As a result of Defendants' actions, Plaintiff has suffered damages, including loss of Plan benefits, damage to her credit reputation, and mental anguish.  *Id*. ¶¶ 35, 56.  Further, Plaintiff "has been disabled from her injury and unable to keep gainful employment" since she was injured in October 2010.  *Id*. ¶ 51.  Plaintiff has also "lived in homeless shelters and/or other economically-assisted living conditions for the past three years."  *Id*.  Plaintiff has exhausted all administrative remedies under the Plan, except where exhaustion of remedies is not required or where pursuit of administrative remedies would be futile.  *Id*. ¶ 38.  Plaintiff has likewise satisfied all conditions precedent necessary to bring her claims.  *Id*.

Outreach Defendants filed their Partial Motion to Dismiss on November 18, 2015.  Plaintiff filed her Response in Partial Opposition to Outreach Defendants' Partial Motion to

Dismiss ("Response"), ECF No. 12, on December 7, 2015.  Outreach Defendants filed their

Motion to Strike Plaintiff's Response on December 13, 2015.

## II.    DISCUSSION

Plaintiff asserts four "counts" against Defendants.  Under Count I, Plaintiff brings a claim

under 29 U.S.C. § 1132(a)(1)(B), asserting that Defendants wrongfully and improperly denied

her benefits under the Plan.  *See* Compl. ¶ 41.  Next, Plaintiff alleges in Count II that Outreach

Health failed to provide her with plan information as required by 29 U.S.C. §§ 1022(a) and

1024(b).  *See id.* ¶ 45.  In Count III, Plaintiff asserts, in the alternative, that under 29 U.S.C.

§§ 1132(a)(3) and 1109(a), Defendants breached their fiduciary duties.  *See id.* ¶ 47.  Finally, in

Count IV, Plaintiff brings a claim under "ERISA-estoppel," alleging that "Defendants are

estopped from denying Plaintiff's claim for medical and wage benefits under the Plan."  *Id.* ¶ 50.

Plaintiff requests both statutory and extra-contractual damages.  *See id.* ¶ 62.

Outreach Defendants move to dismiss Plaintiff's claims under Counts II, III, and IV.

Further, Outreach Defendants move to dismiss Plaintiff's requests for extra-contractual and

punitive damages, and move to strike Plaintiff's request for a jury trial as to all causes of action.

Partial Mot. to Dismiss 1.  In their Motion to Strike, Outreach Defendants argue that Plaintiff's

Response should be stricken because it is untimely, and that the Court should grant Defendants'

Partial Motion to Dismiss as unopposed.  *See* Mot. to Strike.

### A.    Motion to Strike

Outreach Defendants ask the Court to consider their Partial Motion to Dismiss as

unopposed "and grant the relief requested therein" because Plaintiff filed her Response five days

late.  *See id.* at 3-4.  In the alternative, Outreach Defendants request that the Court strike

Plaintiff's Response.  *See id.* at 5.  Plaintiff argues that the Response was timely, and requests

that if the Court determines otherwise, that her Response to the Motion to Strike be treated as a

Motion to Extend Time to File Plaintiff's Response.  Pl.'s Resp. to Outreach Defs.' Mot. to

Strike ("Response to Motion to Strike") 5, ECF No. 15.

Under Local Rule CV-7(e)(2), "[a] response to a dispositive motion shall be filed not

later than 14 days after the filing of the motion."  Local Court Rule CV-7(e)(2).  A "dispositive

motion" includes a motion to dismiss.  Local Court Rule CV-7(c).  After the fourteen-day

deadline for a response to a dispositive motion to be filed, "the Court is no longer obligated to

consider a party's response," but "[t]he decision whether to apply [a local] rule strictly or to

overlook any transgression is generally left to the court's discretion."  *Mata v. United States*, No.

SA:13-CV-220-DAE, 2014 WL 37638, at *2 (W.D. Tex. Jan. 3, 2014) (second alteration in

original); *see Frick v. Quinlin*, 631 F.2d 37, 40 (5th Cir. 1980) (concluding that "district court

was free to either consider or disregard" response that was filed five days late).

While a district court enjoys broad discretionary authority to "enforce local rules for the

orderly and expeditious handling of cases[,] . . . this discretion is limited by considerations of

fairness to the litigants."  *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012).  To that end,

the Fifth Circuit has "approached the automatic grant of a dispositive motion, such as a dismissal

with prejudice based solely on a litigant's failure to comply with a local rule, with considerable

aversion."  *Id.*; *see Mata*, 2014 WL 37638, at *2 (noting that "it is generally preferable to resolve

issues on the merits rather than disposing of a party's claims on procedural technicalities"

(quoting *In re Steel Stadiums, Ltd.*, Bankr. No. 11-42632-DML, 2013 WL 145628, at *4 (Bankr.

N.D. Tex. Jan. 14, 2013))).

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, "[w]hen an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).  The determination of whether a party failed to act because of excusable neglect is an equitable one.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  Courts consider factors such as danger of prejudice to the other party, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*; *see Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006).

Even assuming Plaintiff's Response was filed five days late, the Court declines to grant Outreach Defendants' Partial Motion to Dismiss as unopposed, and declines to strike Plaintiff's Response.  Upon considering the factors relevant to determining whether excusable neglect caused Plaintiff's failure to timely file a Response, the Court finds Plaintiff acted in good faith, and discerns no resulting prejudice to Outreach Defendant or negative effects on the judicial proceedings in this case.  In light of the Court's "considerable aversion" to automatically granting a motion to dismiss "based solely on a litigant's failure to comply with a local rule," and in the interest of resolving issues on the merits, *see Webb*, 457 F. App'x at 452; *Mata*, 2014 WL 37638, at *2, Outreach Defendants' Motion to Strike Plaintiff's Response is denied.

B.      **Motion to Dismiss**

1.      **Standard**

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Generally, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins*, 224 F.3d at 498 (citing Fed. R. Civ. P. 12(b)(6)).  However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*. at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### 2.      Disclosure violations

In Count II of her Complaint, Plaintiff brings causes of action for disclosure violations under 29 U.S.C. §§ 1022(a) and 1024(b).  First, Outreach Defendants argue that Plaintiff pleads insufficient facts to state a claim for 29 U.S.C. § 1024(b)(4), specifically, because "Plaintiff does not allege to whom her alleged requests were sent," does not allege "that the requests were sent to the plan administrator," and does not allege "that her requests were made in writing or that the plan administrator failed to respond to the requests within 30-days."  Partial Mot. to Dismiss 9-10.  In a footnote, Outreach Defendants also argue that Plaintiff does not allege, nor can she allege, that Outreach Health is or was the Plan administrator, and that Plaintiff's § 1024(b) claim therefore fails because "the only person with a duty to provide documents is a plan administrator."  *Id*. at 10 n.5.  Next, Outreach Defendants argue that Plaintiff's allegations under 29 U.S.C. §§ 1022(a) and 1024(b) fail because they are conclusory, do not describe the documents Plaintiff purports she should have received, and do not state whether Plaintiff did not receive "any of the required disclosures, whether she received some and not others[,] or whether she received all required disclosures but the documents themselves were insufficient."  *Id*. at 10-11.  Finally, Outreach Defendants argue that Plaintiff's allegations "directly contradict any

assertion that Plaintiff never received a copy of" the Summary Plan Description or the Plan.  *Id.* at 11 (citing Compl. ¶ 52).

ERISA imposes several disclosure obligations upon administrators of employee benefit plans.  *See, e.g.*, 29 U.S.C. §§ 1132(c)(1), 1022(a), 1024(b).  One set of disclosure requirements, set forth in 29 U.S.C. §§ 1022(a) and 1024(b), requires the administrator to provide a summary plan description to the participant or beneficiary that contains certain information, described in 29 U.S.C. § 1022(b).  *Id.* §§ 1022(a), 1024(b).  If the plan is subsequently modified, the administrator must also provide the participant or beneficiary a summary of any material modification to the terms of the plan.  *Id.*  The summary must "be written in a manner calculated to be understood by the average plan participant" and must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  *Id.* § 1022(a).

Sections 1022(a) and 1024(b)(1) impose upon the administrator an "automatic" duty to furnish the required information because the administrator must "provide the summary plan description or modification whether or not one is requested."  *Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 618 (W.D. Tex. 2013) (citations omitted).  "That said, if a participant or beneficiary *does* request the latest updated summary or certain other materials under § 1024(b)(4), the administrator must provide it."  *Id.* (citations omitted).  If the administrator does not provide the requested information "within 30 days after such request," the administrator "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to a $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132(c)(1)(B).

Because the summary must "be written in a manner calculated to be understood by the average plan participant" and must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," *id.* § 1022(a), an administrator may nonetheless fail to fully comply with 29 U.S.C. §§ 1022(a) and 1024(b) even when the administrator submits a putative summary. *Brown*, 975 F. Supp. 2d at 620. To survive a motion to dismiss, a plaintiff need only allege that the defendant "never provided an accurate, comprehensive, and comprehensible summary of the [p]lan." *Id.*

Outreach Defendants' first argument—that Plaintiff's allegations under 29 U.S.C. § 1024(b)(4) are insufficient because they do not identify to whom her request was sent, that they were sent to the plan administrator, that they were in writing, or that the plan administrator did not respond within thirty days—is unconvincing. To the extent Plaintiff attempts to state a claim under § 1024(b)(4), Plaintiff alleges sufficient facts. [3] Plaintiff alleges that Defendants failed to "timely provide Plaintiff with a copy of the plan when requested." Compl. ¶ 42. Viewing the facts in the light most favorable to the Plaintiff, it is implicit in Plaintiff's allegation that Defendants failed to "timely" provide her with a copy of the plan, that Defendants failed to provide her with a copy of the plan within the thirty-day deadline. *See Calhoun*, 312 F.3d at 733; *Collins*, 224 F.3d at 498. *Cf. Brown*, 975 F. Supp. 2d at 619-20 (finding plaintiff's claim that "Defendants failed and refused to comply with Plaintiff's requests" and "continued to fail and refuse to provide such information as requested until suit was filed," failed to sufficiently allege the temporal element requiring administrator to respond to request within thirty days).

---

[3] The Court notes that Plaintiff states her claim is being pursued for violations of § 1024(b), but does not specify whether she brings her claim under § 1024(b)(4) specifically. *See* Compl. ¶¶ 44-45; Resp. ¶¶ 17-18. However, under "Count I," which Outreach Defendants do not seek to dismiss, *see* Outreach Defs.' Reply Mem. in Support of Partial Mot. to Dismiss ("Reply") 1-2 n.2, ECF No. 14, Plaintiff does, in fact, allege that Defendants "[f]ail[ed] to timely provide Plaintiff with a copy of the plan when requested, and statements, schedules and benefits as required by 29 U.S.C. § 1022 and other provisions under ERISA," Compl. ¶ 42.

Because the Court can draw the reasonable inference that Plaintiff alleges Defendants failed to meet the thirty-day deadline, that Plaintiff did not specifically allege to whom her alleged requests were sent, that the requests were sent to the plan administrator, or that her requests were made in writing, are not fatal to her claim, to the extent she intends to state a claim under § 1024(b)(4). *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Brown*, 975 F. Supp. 2d at 619-20.

Outreach Defendants' second argument—that they cannot be held liable under § 1024(b)(4) because they are not named as the Plan Administrator in the Plan—is also not fatal to Plaintiff's claim at the 12(b)(6) stage. "[T]he Fifth Circuit has suggested in dicta that, where a plan names a plan administrator, an entity other than the named administrator may nonetheless be held liable as a de facto administrator where the plan delegates the administrator's duties to that entity." *Brown*, 975 F. Supp. 2d at 618 (citing *Fisher v. Metro Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990)). Further, "other federal courts of appeal agree that an entity may be deemed a de facto administrator under ERISA violations, although other courts disagree." *Id.* (collecting cases).

Contrary to Outreach Defendants' assertion that Plaintiff does not allege that Outreach Health is the Plan Administrator, Plaintiff alleges just that. *See* Compl. ¶ 13 ("Defendant [Outreach Health] was the Plan Administrator under the Plan."). Further, the weight of authority indicates that Outreach Health may be found liable for violations of 29 U.S.C. § 1024(b)(4). Plaintiff alleges that Outreach Health "functionally exercises discretion or control over the management of the plan or the management or disposition of plan assets; or . . . has discretionary

authority or responsibility over the administration of the [P]lan." *Id.* ¶ 15. Plaintiff's allegations "plausibly suggest" that the Plan Administrator named in the Summary Plan Description "may have delegated administrative authority and duties to [Outreach Health]." *See Brown*, 975 F. Supp. 2d at 619. Thus, Plaintiff has alleged sufficient facts to support a claim that Outreach Health acted as a de facto administrator of the Plan. *See id.*

Moreover, "[b]ecause the question of whether [Outreach Health] is [a] plan administrator for purposes of [ERISA] is best resolved after discovery and on a motion for summary judgment, not at the 12(b)(6) motion to dismiss stage," the Court declines to dismiss Plaintiff's claims under 29 U.S.C. § 1024(b)(4) against Outreach Defendants, to the extent Plaintiff attempts to allege claims under that subsection. *See id.* (second and third alterations in original) (internal quotation marks omitted) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 782 F. Supp. 2d 294, 308 (N.D. Tex. 2011)). Thus, to the extent Plaintiff attempts to state a claim under 29 U.S.C. § 1024(b)(4), Outreach Defendants' Partial Motion to Dismiss Plaintiff's § 1024(b)(4) claims against them must be denied.

Next, Outreach Defendants' argument that Plaintiff fails to state a claim under 29 U.S.C. §§ 1022(a) and 1024(b) generally, is also unavailing. To the extent Plaintiff attempts to assert claims under § 1024(b)(1), Plaintiff has alleged that she was never provided an accurate, comprehensive, and comprehensible summary of the Plan. *See* Compl. ¶ 45. This is all Plaintiff must allege for her § 1024(b)(1) claim to survive a motion to dismiss. *See Brown*, 975 F. Supp. 2d at 620.

Outreach Defendants argue that Plaintiff's allegations show she must have received disclosures, including the Summary Plan Description and a copy of the Plan, and that the

Summary Plan Description could not misrepresent the terms of the Plan when it is the Plan document.  *See* Partial Mot. to Dismiss 11.  However, Plaintiff does not necessarily allege that Outreach Defendants failed to send any summary at all, but that the summary was misleading and caused Plaintiff to incorrectly believe she would be entitled to benefits should she suffer a work related injury.  *See* Compl. ¶ 52.  Because 29 U.S.C. §§ 1022(a) and 1024(b) require not only that the administrator provide a summary, but also that it be accurate, comprehensive, and easily understandable, Plaintiff's allegation that she received a summary—even if the summary constitutes the Plan—is not fatal to her claim.  *See Brown*, 975 F. Supp. 2d at 621.

Moreover, because 29 U.S.C. §§ 1022(a) and 1024(b) require the administrator to furnish a new summary when the plan terms materially change, Outreach Defendants could still have violated the section if they sent Plaintiff an outdated summary or failed to timely send an updated summary after a material modification of the Plan.  *See id.*  Finally, the Court must view the facts in the light most favorable to Plaintiff.  *See, e.g.*, *Calhoun*, 312 F.3d at 733.  As a result, the Court cannot assume that Outreach Defendants fulfilled their disclosure obligations when the allegations are otherwise, as would be necessary if the Court accepted Outreach Defendants' argument on this issue.  *See Brown*, 975 F. Supp. 2d at 621.  Therefore, Plaintiff's allegations are also sufficient to state a claim for her 29 U.S.C. §§ 1022(a) and 1024(b)(1) claims, and Outreach Defendants' Partial Motion to Dismiss is denied to that extent.  *See id.* at 620.

Accordingly, the Court denies Outreach Defendants' Motion to Dismiss Plaintiff's claims under 29 U.S.C. §§ 1022(a) and 1024(b).

### 3.     Breach of fiduciary duties

In Count III, Plaintiff brings a cause of action under 29 U.S.C. §§ 1132(a)(3), 1109(a), and 1104(a), alleging that Defendants "breached their fiduciary responsibilities, obligations, and duties in their denial and refusal to provide Plaintiff benefits under the Plan without a reasonable basis for such refusal."  *See* Compl. ¶ 47.  Outreach Defendants argue that Plaintiff may not bring a claim for breach of fiduciary duty because she also brings a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) in Count I.  *See* Partial Mot. to Dismiss 11-13.  Plaintiff agrees with Defendants that Count III "may not be pursued," as Defendants have, at this stage, not challenged Plaintiff's claims for denial of benefits in Count I.  Resp. ¶ 1.  The Court, therefore, grants Outreach Defendant's Motion to Dismiss Plaintiff's claims under 29 U.S.C. §§ 1132(a)(3), 1109(a), and 1104(a), as to the Outreach Defendants.

### 4.     ERISA-estoppel

Outreach Defendants argue that Plaintiff's ERISA-estoppel claim, which Plaintiff pleads in the alternative, should be dismissed as duplicative of her claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) in Count I.  Partial Mot. to Dismiss 14.  Outreach Defendants also argue that Plaintiff states insufficient facts to support an ERISA-estoppel claim because: (1) "Plaintiff fails to identify any misrepresentations made by Defendants at all and offers no facts to suggest that an alleged misrepresentation was material"; (2) "Plaintiff points to no provision of the Plan which she claims to be ambiguous" and therefore "has failed to allege any facts to suggest reasonable and detrimental reliance on any such misrepresentation, especially in light of the Plan's unambiguous language"; and (3) Plaintiff fails to "satisfy the standard for extraordinary circumstances."  *Id*. at 14-15.

"[C]ourts have analyzed both ERISA estoppel and denial of benefits claims without considering the possibility that the latter could preempt the former." *Brown*, 975 F. Supp. 2d at 625 (citations omitted). Further, "courts have suggested that the ERISA-estoppel doctrine does not appear to be tied to the equitable relief provisions of § 1132(a)(3) such that an ERISA-estoppel cause of action would only be cognizable in the absence of other statutory remedies." *Id.* (internal quotation marks omitted) (citations omitted). Thus, Outreach Defendants' argument that Plaintiff's ERISA-estoppel claim must be dismissed as duplicative of her claims for benefits fails. *See Mora v. Albertson's, L.L.C.*, No. EP-15-CV-00071-FM, 2015 WL 3447963, at *5 (W.D. Tex. May 28, 2015); *Brown*, 975 F. Supp. 2d at 625.

To establish an ERISA-estoppel claim, a plaintiff must establish: "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374 (5th Cir. 2008); *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005). The "reliance" factor encompasses two subfactors: reasonableness and injury. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994) (concluding that plaintiffs "suffered an injury in giving up an opportunity to accommodate their insurance needs through an independent insurance carrier because of their reasonable reliance on Capital Health's representations"); *see Nichols*, 532 F.3d at 374; *Mello*, 431 F.3d at 444-45. To establish reliance, "the plaintiff must have reasonably taken some action, or refrained from taking certain actions, regarding benefits . . . as a result of the misrepresentation." *Hendrian v. AstraZeneca Pharms. LP*, Civil No. 3:13-CV-00775, 2015 WL 404533, at *10 (M.D. Pa. Jan. 29, 2015). The plaintiff must then demonstrate that she "relied upon the misrepresentation in a way that later led to injury." *Id.*

Even assuming Plaintiff alleges sufficient facts to establish material misrepresentations, Plaintiff fails to allege sufficient facts demonstrating that she reasonably and detrimentally relied upon any purported misrepresentations.  Plaintiff advances only conclusory statements to demonstrate reasonable and detrimental reliance on the purported material misrepresentations. Plaintiff states that she (1) "justifiably relied upon" Defendants' misleading conduct and material misrepresentations "to her detriment," and (2) relied "to her detriment" upon written documents prior to and after her injury, leading her to believe that she would be entitled to benefits under the Plan as a result of her injury.  *See* Compl. ¶¶ 50, 54.  These allegations, however, fail to evince detrimental reliance because Plaintiff states no facts demonstrating that any purported misrepresentation caused her to take some action, or refrain from taking some action, regarding benefits, and that she subsequently suffered an injury.  *See Hendrian*, 2015 WL 404533, at *10. Further, Plaintiff does not allege any facts demonstrating that her reliance on any purported misrepresentation was reasonable, and merely states, in conclusory terms, that her reliance was "justifiabl[e]."  *See id.*; Compl. ¶ 50.

Because Plaintiff fails to allege facts demonstrating her reasonable and detrimental reliance upon any purported misrepresentations, Plaintiff fails to state a claim for ERISA-estoppel.  *See Nichols*, 532 F.3d at 374; *High v. E-Sys., Inc.*, 459 F.3d 573, 579 (5th Cir. 2006); *Mello*, 431 F.3d at 444-45; *Hendrian*, 2015 WL 404533, at *10.  Accordingly, Outreach Defendants' Partial Motion to Dismiss with respect to Plaintiff's ERISA-estoppel claim is granted, and Plaintiff's ERISA-estoppel claim against Outreach Defendants is dismissed. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Colony Ins. Co.*, 647 F.3d at 252.

The Court also notes that Plaintiff fails to allege facts demonstrating "the commission of fraud" or "an especially vulnerable plaintiff" such that "extraordinary circumstances" exist in this case.  At least one of five scenarios must exist for a plaintiff to demonstrate extraordinary circumstances: "(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff." *Brown*, 975 F. Supp. 2d at 625-26 (footnotes omitted).  "In the absence of these or similar circumstances, an ERISA-estoppel claim may not proceed."  *Id*. at 626.  Additionally, "[t]he mere failure to abide by plan terms or to fulfill written or oral assurances does not constitute extraordinary circumstances."  *Id*.

With respect to fraud, Plaintiff merely states, in conclusory terms, that: "The medical and wage benefits that were wrongfully denied her due to Defendants' false and fraudulent conduct were vital to her ability to support herself in maintaining the basic necessities of life."  Compl. ¶ 51.  Plaintiff's conclusory statement that Defendants' conduct was "fraudulent," without any facts in support of such an allegation, is insufficient to demonstrate that the "commission of fraud" existed as an extraordinary circumstance in this case.  *See Twombly*, 550 U.S. at 555; *Colony Ins. Co.*, 647 F.3d at 252.  Therefore, Plaintiff cannot rely upon Outreach Defendants' "commission of fraud" as an extraordinary circumstance to support Plaintiff's ERISA-estoppel claim.

Plaintiff also fails to allege sufficient facts to demonstrate "an especially vulnerable plaintiff" that would warrant finding an extraordinary circumstance in this case. Plaintiff alleges that she "is an especially vulnerable plaintiff because she has been disabled from her injury and unable to keep gainful employment" since she was injured in October 2010. Compl. ¶ 51. In further support of her contention that she is especially vulnerable, Plaintiff states that she is sixty-three years old, "is unable to work[,] and has lived in homeless shelters and/or other economically-assisted living conditions for the past three years." *Id.* While Plaintiff alleges that she is "especially vulnerable," and has been since her injury, Plaintiff does not allege facts demonstrating that she was particularly vulnerable at the time Outreach Defendants made any purported misrepresentations to her. As a result, Plaintiff cannot rely on the fact that she is presently "especially vulnerable" to establish extraordinary circumstances to support her ERISA-estoppel claim. *See Belmonte v. Examination Mgmt. Servs., Inc.*, 730 F. Supp. 2d 603, 606 (N.D. Tex. 2010) ("[E]xtraordinary circumstances could exist where misrepresentations were made to an especially vulnerable client.").

Thus, the Court concludes that Plaintiff fails to state a claim for ERISA-estoppel. Nonetheless, "a court generally should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend," unless amendment would necessarily be futile. *Adams v. Energizer Holdings, Inc.*, Civil Action No. 3:12CV797TSL-JMR, 2013 WL 1791373, at *4 (S.D. Miss. Apr. 19, 2013) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)). Plaintiff has moved in the alternative for an opportunity to amend and replead her claims in the event the Court concludes that Plaintiff's claims "are vulnerable to a Rule 12(b)(6) motion to dismiss." Resp. 9. Because amendment would not be futile, the Court

grants Plaintiff leave to amend.  Plaintiff may amend the Complaint to plead reasonable and detrimental reliance.  Plaintiff is also free to allege additional factual matter that would support the existence of material misrepresentation and extraordinary circumstances, as the Court refrains from deciding the sufficiency of Plaintiff's allegations on these remaining elements of ERISA-estoppel.  *See Brown*, 975 F. Supp. 2d at 626.

### 5.     Extra-contractual damages and jury demand

Plaintiff seeks extra-contractual damages, including "consequential damages, incidental damages, damages for Plaintiff's loss of credit and reputation, and damages for mental anguish in the past and into the future."  Compl. ¶ 62.  Outreach Defendants argue that "ERISA does not allow for recovery of extra-contractual, punitive, or compensatory damages."  Partial Mot. to Dismiss 16.  Plaintiff agrees with Defendants that, except as to her ERISA-estoppel claim, her claims for extra-contractual and punitive damages are not available.  *See* Resp. ¶ 2.  The Court therefore dismisses Plaintiff's request for extra-contractual and punitive damages under Counts I and II, the only Counts that have not been dismissed in this Order.  However, the Court declines to decide whether Plaintiff may seek extra-contractual and punitive damages for her ERISA-estoppel claim because the Court has dismissed Plaintiff's ERISA-estoppel claim with leave to amend.

Finally, Plaintiff agrees with Defendants that a jury trial is not available.  Resp. ¶ 2. Accordingly, Plaintiff's jury demand is stricken as to all causes of action.

## III.     CONCLUSION

For the foregoing reasons, Outreach Defendants' Motion to Strike, ECF No. 13, is **DENIED**.

**IT IS FURTHER ORDERED** that Outreach Defendants' Partial Motion to Dismiss, ECF No. 10, is **GRANTED** in part.

The Motion is **GRANTED** as to Plaintiff's claims for breach of fiduciary duties under 29 U.S.C. §§ 1132(a)(3), 1109(a), and 1104(a) in Count III, and as to Plaintiff's claim for ERISA-estoppel in Count IV.

The Motion is **DENIED** as to Plaintiff's claim for disclosure violations under 29 U.S.C. §§ 1022(a) and 1024(b) in Count II.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend her ERISA-estoppel claim is **GRANTED**.  Plaintiff may file an amended complaint **on or before June 17, 2016**.

**IT IS FURTHER ORDERED** that Plaintiff's request for extra-contractual and punitive damages with respect to Plaintiff's claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B), and for disclosure violations under 29 U.S.C. §§ 1022(a) and 1024(b), is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's jury demand is **STRICKEN**.

**SO ORDERED.**

**SIGNED this 3rd day of June, 2016.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE